Rosemary M. Rivas (State Bar No. 209147)
Email: rrivas@zlk.com
Quentin A. Roberts (State Bar No. 306687)
Email: qroberts@zlk.com
**LEVI & KORSINSKY LLP**
44 Montgomery Street, Suite 650
San Francisco, California 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

Gayle M. Blatt (State Bar No. 122048)
Email: gmb@cglaw.com
**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD LLP**
110 Laurel Street
San Diego, California 92101
Telephone: (619) 238-1811
Facsimile: (619) 544-9232

Counsel for Plaintiffs and the Proposed Classes

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IRENE SUNG, KIMBERLY CARBONI, ANNIE FULTON, CARY BERGER, EMMALYNE OWENS, RUTH PHELPS, and CHRISTINE WILLETTS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SCHURMAN FINE PAPERS, d/b/a SCHURMAN RETAIL GROUP,<br><br>Defendant. | Case No. 3:17-cv-02760<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Irene Sung, Kimberly Carboni, Annie Fulton, Cary Berger, Emmalyne Owens, Ruth Phelps, and Christine Willetts ("Plaintiffs"), on behalf of themselves and the proposed Classes defined herein, bring this class action suit against Defendant Schurman Fine Papers, doing business as Schurman Retail Group, ("SRG" or "Company"). In support of this Class Action Complaint, Plaintiffs allege, based on personal information and the investigation of their counsel, as follows:

# NATURE OF THE ACTION

1. On January 18, 2017, in what is known as a "phishing" attack, a cybercriminal pretending to be the Chief Financial Officer of SRG sent an email asking for the IRS Form W-2 ("W-2") for all 2016 employees of SRG. A W-2 contains sensitive and personal identifying information ("PII"), including name, address, salary, and social security number ("SSN") of the employee to whom it corresponds.

2. Unfortunately, an SRG employee provided the requested information. In its notice of data breach to employees, SRG says it did not discover the fraudulent request until on or around March 8, 2017.

3. To date, a number of current and former SRG employees have experienced identity theft. Specifically, the cybercriminals responsible for the phishing attack have fraudulently filed tax returns, requested tax information from the IRS, and filled out information to obtain federal student loans, among other things, using the SRG W-2s it obtained.

4. It is remarkable that SRG fell for this trap. Such "phishing" or "spoofing" attacks on businesses are not new and are widely reported in the media. Moreover, in 2016 and in 2017, the IRS published and issued alerts to payroll and human resources professionals warning them of phishing schemes designed to obtain personal information, such as W-2s for purposes of monetizing the data, including by filing fraudulent tax returns for refunds.

5. Despite widespread warnings, SRG failed to implement proper security measures and/or adequately train staff handling sensitive employee information, such as the W-2 information. Now SRG's former and current employees must pay the price.

6. Further, while SRG provided thieves with the W-2 information of all 2016 employees in January 2017, the Company claims it did not learn about the fraud until sometime in March 2017, when employees began reporting that fraudulent tax returns had been filed in their names.

7. SRG first notified current employees about the spoofing attack via an internal memo sometime on March 10, 2017. However, it was not until around March 21, 2017, nearly two months after the attack, that SRG sent letters notifying its 2016 employees of the spoofing attack. Moreover, certain former employees, including Plaintiff Berger, did not receive a data breach notification letter

unless they contacted SRG directly after experiencing identity theft. By the time SRG notified its current and former employees of the data breach, it was too late for many to protect themselves.

8. Both current and former employees have either suffered identity theft and/or will be at a heightened risk for identity theft for the rest of their lives. With the PII contained within the W-2s, criminals can fraudulently open credit card accounts; take out loans; file tax returns; apply for benefits; and obtain employment, among other things.

9. Plaintiffs, on behalf of themselves and all others similarly situated, bring claims for negligence, breach of contract, violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and for violations of state security breach notification laws.

## THE PARTIES

10. Plaintiff Irene Sung is a citizen of Massachusetts. Plaintiff was employed by SRG in 2016 and received a notice data breach letter from SRG.

11. Plaintiff Kimberly Carboni is a citizen of Florida. Plaintiff was employed by SRG in 2016 and received a notice data breach letter from SRG.

12. Plaintiff Annie Fulton is a citizen of California. Plaintiff was employed by SRG in 2016 and received a notice data breach letter from SRG.

13. Plaintiff Cary Berger is a citizen of Massachusetts. Plaintiff was employed by SRG in 2016 and received a notice data breach letter from SRG.

14. Plaintiff Emmalyne Owens is a citizen of North Carolina. Plaintiff was employed by SRG in 2016 and received a notice data breach letter from SRG.

15. Plaintiff Ruth Phelps is a citizen of Massachusetts. Plaintiff is currently an SRG employee and was an employee in 2016. Plaintiff received a notice data breach letter from SRG.

16. Plaintiff Christine Willetts is a citizen of Massachusetts. Plaintiff is currently an SRG employee and was an employee in 2016. Plaintiff received a notice data breach letter from SRG.

17. Defendant SRG is a citizen and a corporation organized under the laws of the state of California. SRG is headquartered at 500 Chadbourne Road, Fairfield, California 94534. The Company has approximately 450 retail stores nationwide, including under the brand name Papyrus.

**JURISDICTION AND VENUE**

18.　This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs; the number of members of the proposed Class exceeds 100; and Plaintiffs and at least one Defendant are citizens of different states.

19.　This Court has *in personam* jurisdiction over Defendant because Defendant is present and licensed to do business in this Judicial District, regularly conducts business in this Judicial District, and/or has extensive contacts with this forum.

20.　Venue is proper in this Court pursuant to 28 U.S.C. § 1391.  Defendant transacts substantial business in this District, including operating a number of retail stores under the name Papyrus.

21.　This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

**FACTUAL ALLEGATIONS**

**What is a Phishing Attack?**

22.　A phishing attack is a scheme by cyber criminals to try to get people to share personal and financial data, such as W-2s during the upcoming tax season.  In 2016, the IRS warned that criminals were targeting company payroll departments.

23.　One phishing variation is known as a "spoofing" email that will contain the actual name of the company's chief executive officer ("CEO") or another executive; however, it is sent by a person pretending to be the CEO.  The email will go to a company office employee and will request a list of employees and information, such as social security numbers.

24.　Typical language contained in the spoofing emails are as follows:

- "Kindly send me the individual 2015 W-2 (PDF) and earnings summary of all W-2 of our company staff for a quick review."
- "Can you send me the updated list of employees with full details (Name, Social Security Number, Date of Birth, Home Address, Salary)."
- "I want you to send me the list of W-2 copy of employees wage and tax statement

1 | for 2015, I need them in PDF file type, you can send it as an attachment. Kindly
2 | prepare the lists and email them to me asap."

25. These spoofing emails are designed to trick company payroll departments into thinking they are legitimate requests by company executives and into sending the requested information. The spoofer can then use the information for a wide variety of identity fraud, including filing fraudulent tax returns; opening credit card and bank accounts; obtaining loans; opening utility accounts; and filing for student aid, among other things.

26. In 2016 alone, it was widely reported that 41 organizations were hit by phishing attacks that compromised thousands of employee records.

### *Security Data Breaches Involving PII Lead to Identity Theft*

27. The United States Government Accountability Office noted in a June 2007 report on Data Breaches ("GAO Report") that identity thieves can use identifying information such as SSNs to open financial accounts, receive government benefits, and incur charges and credit in a person's name.[1] As the GAO Report states, this type of identity theft is the most harmful because it may take some time for the victim to become aware of the theft and can adversely impact the victim's credit rating. In addition, the GAO Report states that victims of identity theft will face "substantial costs and inconvenience repairing damage to their credit records[ ] [and their] good name."

28. According to the Federal Trade Commission ("FTC"), identity theft victims must spend countless hours and money repairing the impact to their good name and credit record.[2] Identity thieves use stolen personal information such as SSNs for a variety of crimes, including credit card fraud, phone or utilities fraud, tax fraud, and bank/finance fraud.[3]

---

[1] *See* http:///www.gao.gov/new.items/d07737.pdf.

[2] *See* FTC Identity Theft site, http://www.ftc.gov/bcp/edu/microsites/idtheft/consumers/about-identity-theft.html.

[3] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 17 C.F.R. § 162.30. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number . . . ." *Id*.

29. Identity theft crimes often include more than just crimes of financial loss. Identity thieves can also commit various types of government fraud, such as: obtaining a driver's license or official identification card in the victim's name but with the thief's picture; using the victim's name and SSN to obtain government benefits; or filing a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's SSN, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name. Further, loss of private and personal health information can expose the victim to loss of reputation, loss of job employment, black mail, and other negative effects.

30. Additionally, identity theft crimes in today's world include more than just crimes for financial misuse as identity thieves have used personal information to assist in preparing or committing acts of domestic terrorism.

31. A person whose personal information has been compromised may not see any signs of identity theft for *years*. According to the GAO Report:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to one year or more before being used to commit identity theft. Further, once stolen data has been sold or posted on the web, fraudulent attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

32. Because personal information is such a valuable commodity to identity thieves, once the information has been compromised, criminals often trade the information on the "cyber black-market" for a number of years.[4] As a result of recent large-scale data breaches, identity thieves and cyber criminals have openly posted stolen credit card numbers, SSNs, and other personal information directly on various Internet websites essentially making the information publicly available. One study found hundreds of websites which displayed stolen personal information and that none of these websites were blacklisted by Google's "Safe Browsing list." As the study concluded:

---

[4] Companies, in fact, also recognize personal information as an extremely valuable commodity akin to a form of personal property. *See* T. Soma, et al., *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) http://law.richmond.edu/jolt/v15i4/article11.pdf.

> It is clear from the current state of the credit card black-market that cyber criminals can operate much too easily on the Internet. They are not afraid to put out their email addresses, in some cases phone numbers and other credentials in their advertisements. It seems that the black market for cyber criminals is not underground at all. In fact, it's very "in your face."[5]

33. Unlike credit card data theft, where the credit card numbers can be changed and cancelled quickly, personal information such as birth dates and SSNs cannot be changed or as easily cancelled.

## CLASS ALLEGATIONS

34. Plaintiffs bring this action on behalf of themselves and all other members of the proposed Classes initially defined as follows:

   a. **Nationwide Employee Class:** All persons residing in the United States and who (1) were employed by Schurman Fine Papers in 2016, and (2) whose PII was compromised as a result of the data breach.

   b. **California Employee Class:** All persons residing in California and who (1) were employed by Schurman Fine Papers in 2016, and (2) whose PII was compromised as a result of the data breach.

   c. **Florida Employee Class:** All persons residing in Florida and who (1) were employed by Schurman Fine Papers in 2016, and (2) whose PII was compromised as a result of the data breach.

   d. **Massachusetts Employee Class:** All persons residing in Massachusetts and who (1) were employed by Schurman Fine Papers in 2016, and (2) whose PII was compromised as a result of the data breach.

   e. **North Carolina Employees Class:** All persons residing in North Carolina and who (1) were employed by Schurman Fine Papers in 2016, and (2) whose PII was compromised as a result of the data breach.

   f. **Third-Party Class:** All persons not employed by Schurman Fine Papers in 2016, whose PII was compromised as a result of the data breach, including but not limited to spouses, children, or other individuals associated with SRG Employees.

---

[5] http://www.stopthehacker.com/2010/03/03/the-underground-credit-card-blackmarket/

35. Excluded from the proposed Classes are: any entity in which SRG has a controlling interest, is a parent or subsidiary, or which is controlled by SRG, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of SRG. Also excluded are the judges and court personnel in this case and any members of their immediate families. Plaintiffs reserve the right to re-define the Class definitions after conducting discovery.

36. All members of the proposed Classes are readily ascertainable. SRG has access to addresses and other contact information for thousands of members of the proposed Classes, which can be used for providing notice to many Class members.

37. This action has been properly brought and may properly be maintained as a class action under Rule 23(a)(1-4), Rule 23(b)(1-3), and Rule 23(c)(4) of the Federal Rules of Civil Procedure and case law thereunder.

**Numerosity of the Proposed Classes**

**(Fed. R. Civ. P. 23(a)(1))**

38. The Classes are so numerous that joinder of all members would be impracticable. While the precise number of Class members has not yet been determined, SRG has 450 retail stores across the United States. Therefore, it is likely that Class members number in the thousands.

**Predominance of Common Questions of Fact and Law**

**(Fed. R. Civ. P. 23(a)(2); 23(b)(3)**

39. There are questions of law and fact common to all Class members, and they predominate over any questions affecting only individual Class members, including, but not limited to the following:

a. Whether and to what extent Defendant had a duty to protect the Class members' PII;

b. Whether Defendant breached its duty to protect the Class members' PII;

c. Whether Defendant failed to implement and maintain reasonable security procedures and practices to protect Plaintiffs' and the Class members' PII;

d. Whether Defendant failed to provide adequate employee training on security procedures and practices to protect Plaintiffs' and the Class members PII;

e. Whether Defendant notified Plaintiffs' and the Class members of the data breach in the

most expedient time possible and without unreasonable delay as required by the state security breach notification laws alleged herein;

f. Whether Defendant engaged in unlawful and unfair conduct in violation of California Business and Professions Code §§ 17200, *et seq.*, California's Unfair Competition Law ("UCL");

g. Whether Defendant acted negligently in safeguarding, monitoring, and protecting Plaintiffs' and the Class members' PII;

h. Whether Plaintiffs and Class members are entitled to damages;

i. Whether Defendant provided adequate credit monitoring; and

j. Whether Plaintiffs and Class members are entitled to equitable and/or injunctive relief.

### Typicality of Claims

### (Fed. R. Civ. P. 23(a)(3))

40. Plaintiffs' claims are typical of the claims of the Class members. Plaintiffs and all Class members were injured through SRG's uniform misconduct described above and assert the same claims for relief. The same events and conduct that give rise to Plaintiffs' claims also give rise to the claims of every other Class member because each Plaintiff and Class member is a person that has suffered harm as a direct result of the same conduct engaged in by SRG and resulting in the data breach.

### Adequacy of Representation

### (Fed. R. Civ. P. 23(a)(4))

41. Plaintiffs and their counsel will fairly and adequately represent the interests of the Class members. Plaintiffs have no interest antagonistic to, or in conflict with, the interests of the Class members. Plaintiffs' lawyers are highly experienced in the prosecution of consumer class actions and complex commercial litigation.

### Superiority of a Class Action

### (Fed. R. Civ. P. 23(b)(3))

42. A class action is an appropriate method for the fair and efficient adjudication of this controversy. There is no special interest in the members of the Class individually controlling the

prosecution of separate actions. The loss of money and other harm sustained by many individual Class members will not be large enough to justify individual actions, especially in proportion to the significant costs and expenses necessary to prosecute this action. The expense and burden of individual litigation make it impossible for many members of the Class individually to address the wrongs done to them. Class treatment will permit the adjudication of claims of Class members who could not afford individually to litigate their claims against SRG. Class treatment will permit a large number of similarly situated persons to prosecute their common claims in a single form simultaneously, efficiently, and without duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. Furthermore, SRG transacts substantial business in and perpetuated its unlawful conduct in California. SRG will not be prejudiced or inconvenienced by the maintenance of this class action in this forum. Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(a) and (b)(3). The above common questions of law or fact predominate over any questions affecting individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

43. The expense and burden of litigation will substantially impair the ability of Plaintiffs and Class members to pursue individual lawsuits to vindicate their rights. Absent a class action, SRG will retain the benefits of its wrongdoing despite its serious violations of the law.

**<u>Risk of Inconsistent or Dispositive Adjudications and the
Appropriateness of Final Injunctive or Declaratory Relief</u>**

**(Fed. R. Civ. P. 23(b)(1) and (2))**

44. In the alternative, this action may properly be maintained as a class action, because:

a. the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendant; or

b. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be

dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

      c.     Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

### Issue Certification

### (Fed. R. Civ. P. 23(c)(4))

45.    In the alternative, the common questions of fact and law, set forth in Paragraph 39, are appropriate for issue certification on behalf of the proposed class.

### FIRST CAUSE OF ACTION

### Negligence—On Behalf of All Classes

46.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restates them as if fully set forth herein.

47.    Defendant requested and came into possession of Plaintiffs' and Class members' PII, and had a duty to exercise reasonable care in safeguarding and protecting such information from unlawful intrusion. Defendant's duty arose from, among other things, the legal requirements and its relationship with its employees.

48.    Defendant had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiffs' and Class members' PII, and a duty to timely notify Plaintiffs of a data breach of their PII. Defendant also had a duty to adequately train personnel regarding the protection of Plaintiffs' and Class members' PII. The breach of security, unauthorized access, and resulting injury to Plaintiffs' and the Class were reasonably foreseeable, particularly in light of its inadequate data security policies and procedures and lack of training and widely reported spoofing incidents.

49.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class members by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding Plaintiffs' and Class members' PII within Defendant's control, and in promptly notifying Plaintiffs and Class members. But for Defendant's breach of its duties, Plaintiffs' and Class members' PII would not have been compromised.

50. Plaintiffs' and Class members' PII was stolen and used for identity theft as the proximate result of Defendant failing to exercise reasonable care in safeguarding such information by adopting, implementing or maintaining appropriate security measures and training.

51. As a result of Defendant's conduct, Plaintiffs and Class members have suffered identity theft and/or are at a continued significant increased risk of identity theft for years to come. Plaintiffs and Class members suffered and will continue to suffer actual damages including, but not limited to, expenses and/or time spent on communicating and/or visiting with the IRS; expenses and/or time spent on credit monitoring, black market website surveillance, public record scanning, credit freezes, and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; and time spent initiating fraud alerts.

## SECOND CAUSE OF ACTION

### ("Unlawful" Business Practices in Violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*—On Behalf of All Classes)

52. Plaintiffs hereby incorporate all other paragraphs of this Complaint and restates them as if fully set forth herein.

53. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code § 17200.

54. A business act or practice is "unlawful" if it violates any established state or federal law.

55. SRG's practices were unlawful and in violation of Civil Code § 1798.81.5(b) because SRG failed to take reasonable measures in protecting Plaintiffs' and Class members' PII, as alleged herein.

56. SRG's practices were also unlawful and in violation of Civil Code § 1798.82 because SRG unreasonably delayed informing Plaintiffs and Class members about the breach of security after SRG knew the breach occurred.

57. Plaintiffs reserve the right to identify other violations of law as the facts develop.

58. As a result of SRG's practices, Plaintiffs have suffered injury in fact and lost money or

property. Specifically, Plaintiffs and Class members have already suffered identity theft and/or are at a continued significant increased risk of identity theft for years to come. Plaintiffs and Class members suffered and will continue to suffer actual damages including, but not limited to, expenses and/or time spent on communicating and/or visiting with the IRS; expenses and/or time spent on credit monitoring, black market website surveillance, public record scanning, credit freezes, and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; and time spent initiating fraud alerts.

59.  Plaintiffs, on behalf of themselves and the Class members, seek appropriate injunctive relief designed to ensure against the recurrence of a data breach by adopting and implementing best security data practices to safeguard employee PII and that would include, without limitation, an order and judgment directing SRG to: (1) implement policies and procedures for the securing of data that complies with all legal requirements; (2) encrypt all PII; (3) provide training to employees; and (4) provide to Plaintiffs and Class members appropriate monitoring services, including credit monitoring, black website surveillance, and public record scanning, among other things.

### THIRD CAUSE OF ACTION

**("Unfair" Business Practices in Violation of the Unfair Competition Law,
Cal. Bus. & Prof. Code §§ 17200, *et seq.*—On Behalf of All Classes)**

60.  Plaintiffs hereby incorporate all other paragraphs of this Complaint and restates them as if fully set forth herein.

61.  The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code § 17200.

62.  SRG's practices constitute unfair business practices in violation of the UCL because, among other things, they are immoral, unethical, oppressive, unscrupulous, or substantially injurious to employees and/or any utility of such practices is outweighed by the harm caused to employees. SRG's practices violate the legislative policies of the underlying statutes alleged herein: namely, protecting employee PII. SRG's practices caused substantial injury to Plaintiffs and are not outweighed by any benefits, and Plaintiffs could not have reasonably avoided injuries.

63.     As a result of SRG's practices, Plaintiffs have suffered injury in fact and lost money or property. Specifically, Plaintiffs and Class members have already suffered identity theft and/or are at a continued significant increased risk of identity theft for years to come. Plaintiffs and Class members suffered and will continue to suffer actual damages including, but not limited to, expenses and/or time spent on communicating and/or visiting with the IRS; expenses and/or time spent on credit monitoring, black market website surveillance, public record scanning, credit freezes, and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; and time spent initiating fraud alerts.

64.     Plaintiffs, on behalf of the Class, seek appropriate injunctive relief designed to ensure against the recurrence of a data breach by adopting and implementing best security data practices to safeguard employee PII and that would include, without limitation, an order and judgment directing SRG to: (1) implement policies and procedures for the securing of data that complies with all legal requirements; (2) encrypt all PII; (3) provide training to employees; and (4) provide to Plaintiffs and Class members appropriate monitoring services, including credit monitoring, black website surveillance, and public record scanning, among other things.

### FOURTH CAUSE OF ACTION

### Breach of Implied Contract—On Behalf of the Nationwide Employee Class

65.     Plaintiffs hereby incorporate all other paragraphs of this Complaint and restates them as if fully set forth herein.

66.     Employees of Defendant SRG provided their PII in connection with their employment with SRG in order to verify their identity, receive compensation, and in order for SRG to have complete employee records for tax purposes, among other things.

67.     Plaintiffs and the Employee Class members provided various forms of PII to SRG as a condition precedent to their employment with SRG, or in connection with employer sponsored benefits.

68.     Understanding the sensitive nature of PII, SRG implicitly promised Plaintiffs and the Employee Class members that it would take adequate measures to protect their PII.

69.     Indeed, a material term of this contract is a covenant by SRG that it will take reasonable

efforts to safeguard employees' PII.

70.     SRG's current and former employees, including Plaintiffs and the Employee Class members, relied upon this covenant and would not have disclosed their PII without assurances that it would be properly safeguarded.  Moreover, the covenant to adequately safeguard the PII of Plaintiffs and the Employee Class members is an implied term, to the extent it is not an express term.

71.     Plaintiffs and the Employee Class members fulfilled their obligations under the contract by providing their PII to SRG.

72.     SRG however, failed to safeguard and protect the PII of Plaintiffs and the Employee Class members.  SRG's breach of its obligations under the contract between the parties directly caused Plaintiffs and Employee Class members to suffer injuries.

73.     Plaintiffs, on behalf of themselves and the Employee Class members, respectfully request this Court award all relevant damages for SRG's breach of contract.

## FIFITH CAUSE OF ACTION

**Violation of the Security Breach Notification Law, Cal. Civil Code § 1798.82—by Annie Fulton on Behalf of the California Employee Class**

74.     Plaintiff Annie Fulton hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

75.     Defendant conducts business in California and owns computerized data that includes the PII of California residents, including Plaintiff's PII.

76.     Plaintiff Annie Fulton was a California resident at the time she worked for Defendant.

77.     Defendant's information security systems were breached in January 2017, however, Defendant did not inform Plaintiff and the California Employee Class until sometime in late March 2017.

78.     By failing to timely disclose to Plaintiff and each member of the proposed California Employee Class that their unencrypted Personal Information was reasonably believed to have been acquired by an unauthorized person, Defendant violated Cal. Civ. Code § 1798.82.  Defendant failed to notify Plaintiff and the proposed California Employee Class of the 2017 data breach in the most expedient time possible and unreasonably delayed notifying those affected since law enforcement did

not determine notification would hinder a criminal investigation.

79. Defendant could have notified Plaintiff and the proposed California Employee Class sooner had it implemented and maintained adequate policies and procedures.

80. As a direct and proximate result of Defendant's violation of Cal. Civ. Code § 1798.82, Plaintiff and California Employee Class members have been injured.  Plaintiff and California Employee Class members are therefore entitled to damages, injunctive relief, and reasonable attorneys' fees and costs.

## SIXTH CAUSE OF ACTION

**Violation of the Security Breach Notification Law, Mass. Gen. Laws §§ 93H-1, *et seq.*—by Cary Berger, Christine Willetts, Ruth Phelps, and Irene Sung on Behalf of the Massachusetts Employee Class**

81. Plaintiffs Cary Berger, Christine Willetts, Ruth Phelps, and Irene Sung hereby incorporate all other paragraphs of this Complaint and restates them as if fully set forth herein.

82. Defendant conducts business in Massachusetts and owns computerized data that includes the PII of Massachusetts residents, including Plaintiffs' PII.

83. Plaintiffs were at all relevant times residents of Massachusetts.

84. Defendant's information security systems were breached in January 2017, however, Defendant did not inform Plaintiffs until sometime in late March 2017.

85. By failing to timely disclose to Plaintiffs and each member of the proposed Massachusetts Employee Class that their PII was reasonably believed to have been acquired by an unauthorized person, Defendant violated Mass. Gen. Laws §§ 93H-1, *et seq.*  Defendant failed to notify Plaintiffs and the proposed Massachusetts Employee Class of the 2017 data breach in the most expedient time possible and unreasonably delayed notifying those affected since law enforcement did not determine notification would hinder a criminal investigation.

86. Defendant could have notified Plaintiffs and the proposed Massachusetts Employee Class sooner had it implemented and maintained adequate policies and procedures.

87. As a direct and proximate result of Defendant's violation of Mass. Gen. Laws §§ 93H-1, Plaintiffs and Massachusetts Employee Class members have been injured.  Plaintiffs and Massachusetts Employee Class members are therefore entitled to damages, injunctive relief, and

reasonable attorneys' fees and costs.

## SEVENTH CAUSE OF ACTION

**Violation of the Security Breach Notification Law, Fla. Stat. §§ 501.171, 292.0041, 282.318(2)(i), *et seq.*—by Kimberly Carboni on Behalf of the Florida Employee Class**

88. Plaintiff Kimberly Carboni hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

89. Defendant conducts business in Florida and owns computerized data that includes the PII of Florida residents, including Plaintiff's PII.

90. Plaintiff was at all relevant times a resident of Florida.

91. Defendant's information security systems were breached in January 2017, however, Defendant did not inform Plaintiff until sometime in late March 2017.

92. By failing to timely disclose to Plaintiff and each member of the proposed Florida Employee Class that their PII was reasonably believed to have been acquired by an unauthorized person, Defendant violated Fla. Sta. §§ 501.171, 292.0041, 282.318(2)(i), *et seq.* Defendant failed to notify Plaintiff and the proposed Florida Employee Class of the 2017 data breach in the most expedient time possible and unreasonably delayed notifying those affected since law enforcement did not determine notification would hinder a criminal investigation.

93. Defendant could have notified Plaintiff and the proposed Florida Employee Class sooner had it implemented and maintained adequate policies and procedures.

94. As a direct and proximate result of Defendant's violation of Fla. Sta. §§ 501.171, 292.0041, 282.318(2)(i), *et seq.*, Plaintiff and Florida Employee Class members have been injured. Plaintiff and Florida Employee Class members are therefore entitled to damages, injunctive relief, and reasonable attorneys' fees and costs.

## EIGHTH CAUSE OF ACTION

**Violation of the Security Breach Notification Law, N.C. Gen. Stat. §§ 75-61, 75-65, *et seq.*—by Emmalyne Owens on Behalf of the North Carolina Employee Class**

95. Plaintiff Emmalyne Owens hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

96. Defendant conducts business in North Carolina and owns computerized data that includes the PII of North Carolina residents, including Plaintiffs' PII.

97. Plaintiff was at all relevant times a resident of North Carolina.

98. Defendant's information security systems were breached in January 2017, however, Defendant did not inform Plaintiff until sometime in late March 2017.

99. By failing to timely disclose to Plaintiff and each member of the proposed North Carolina Employee Class that their PII was reasonably believed to have been acquired by an unauthorized person, Defendant violated N.C. Gen. Stat. §§ 75-61, 75-65.  Defendant failed to notify Plaintiff and the proposed North Carolina Employee Class of the 2017 data breach in the most expedient time possible and unreasonably delayed notifying those affected since law enforcement did not determine notification would hinder a criminal investigation.

100. Defendant could have notified Plaintiff and the proposed North Carolina Employee Class sooner had it implemented and maintained adequate policies and procedures.

101. As a direct and proximate result of Defendant's violation of N.C. Gen. Stat. §§ 75-61, 75-65, Plaintiff and North Carolina Employee Class members have been injured.  Plaintiff and North Carolina Employee Class members are therefore entitled to damages, injunctive relief, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Classes set forth herein, respectfully request the following relief:

A. That the Court certify this case as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4), and pursuant to Fed. R. Civ. P. 23(g), appoint the named Plaintiffs to be the Class representatives and their undersigned counsel as Class counsel;

B. Find that SRG breached its duty to safeguard and protect Plaintiffs' and the Class members' PII which was compromised in the data breach;

C. That the Court award Plaintiffs and the Class members appropriate relief, including actual damages;

D. That the Court award Plaintiffs and the Class members equitable, injunctive and

declaratory relief as may be appropriate.  Plaintiffs, on behalf of the proposed Classes, seek appropriate injunctive relief designed to ensure against the recurrence of a data breach by adopting and implementing best security data practices to safeguard employee PII and that would include, without limitation, an order and judgment directing SRG to: (1) implement policies and procedures for the securing of data that complies with all legal requirements; (2) encrypt all PII; (3) provide training to employees; and (4) provide to Plaintiffs and Class members appropriate monitoring services, including credit monitoring, black website surveillance, and public record scanning, among other things.

E. That the Court award Plaintiffs and the Class members pre-judgment and post-judgment interest;

F. That the Court award Plaintiffs and the Class members reasonable attorneys' fees and costs as allowable by law;

G. Such additional orders or judgments as may be necessary to prevent these practices and to restore any interest or any money or property which may have been acquired by means of the violations set forth in this Complaint;

H. That the Court award Plaintiffs and Class members such other, favorable relief as allowable under law or at equity.

**JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury on all issues so triable.

Dated: May 12, 2017

**LEVI & KORSINSKY LLP**

By: /s/ *Rosemary M. Rivas*
Rosemary M. Rivas

Quentin A. Roberts
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD LLP**
Gayle M. Blatt
110 Laurel St.
San Diego, California 92101
Telephone: (619) 238-1811
Facsimile: (619) 544-9232

Counsel for Plaintiffs and the Proposed Classes