UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| IRENE SUNG, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SCHURMAN FINE PAPERS d/b/a SCHURMAN RETAIL GROUP, <br><br> Defendant. | Case No. 17-cv-02760-LB <br><br> **PRELIMINARY APPROVAL ORDER** <br><br> Re: ECF No. 46 |

# INTRODUCTION

This is a putative class action under Rule 23.[1] The plaintiffs are current and former employees (and their spouses and dependents) of Schurman Fine Papers d/b/a Schurman Retail Group ("SRG"). They contend that a phishing attack on SRG in 2016 — and SRG's lax security and poor training — resulted in the theft of their W-2 data: names, addresses, compensation, and Social Security Numbers.[2] On behalf of national and state classes, they assert the following claims arising out of the data breach of their personally identifying information ("PII"): (1) negligence (on behalf of all classes); (2) unlawful business practices in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 (on behalf of all classes); (3) unfair

---

[1] First Amended Complaint ("FAC") – ECF No. 28. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id*. at 2 (¶ 1).

ORDER – No. 17-cv-02760-LB

business practices in violation of California's UCL (on behalf of all classes); (4) breach of implied contract (on behalf of the Nationwide Employee Class); (5) a violation of California's Security Breach Notification Law, Cal. Civ. Code § 1798.82 (on behalf of the California Employee Class); and (6) a violation of North Carolina's Security Breach Notification Law, N.C. Gen. Stat. §§ 75–61, 75–65, *et seq.* (on behalf of the North Carolina Employee Class).[3]

The parties settled their case, and the plaintiffs filed an unopposed motion for preliminary approval of the class-action settlement.[4] The court grants the motion.

## STATEMENT

### 1. Other Information About the Lawsuit to Date

After the defendants filed a motion to dismiss, the plaintiffs filed the first amended class-action complaint.[5] The parties participated in informal discovery and then agreed to mediate their case before the Honorable Edward A. Infante (Ret.), who has mediated a number of data-breach cases.[6] After a full-day mediation, the parties "ultimately reached an agreement on the essential terms" of a settlement and signed a term sheet, and they finalized the settlement agreement over the next months.[7]

### 2. Proposed Settlement

The parties agreed to the following class definitions for settlement purposes only:

> **Settlement Employee Class**: All persons who are or were employees of SRG or its affiliates (collectively "SRG") and whose W-2 information was involved in the Data Incident.
>
> **Settlement Third-Party Class**: All individuals who were Qualifying Spouses or Qualifying Adult Dependents (as defined in the Settlement Agreement) of a Settlement Employee Class Member.

---

[3] *Id.* at 17–24.

[4] Mot. – ECF No. 46; Statement of Non-Opposition – ECF No. 50.

[5] ECF Nos. 15, 28.

[6] Mot. – ECF No. 46-1 at 6.

[7] *Id.*

ORDER – No. 17-cv-02760-LB　　　　　2

> Unless expressly distinguished, "Settlement Class" or "Settlement Class Members" refers to both of the above-defined classes collectively.
>
> Excluded from the Settlement Class are any entity in which SRG has a controlling interest, is a parent or subsidiary, or which is controlled by SRG, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of SRG.[8]

In summary form, the Settlement Agreement[9] is as follows:

**2.1 Identity Theft Protection Services**

SRG originally offered two years of credit monitoring to its employees through AllClear ID. The Settlement Agreement provides extended credit monitoring through AllClear ID for all Settlement Class Members, regardless of whether they previously enrolled in the credit monitoring, through March 20, 2022.[10] Unless they have timely opted out of the Settlement, Settlement Class Members who have already enrolled will have their coverage extended automatically.[11] Settlement Class Members who have not enrolled will have until July 13, 2018 (the "Election Deadline") to submit an Election Form to enroll in the credit monitoring.[12]

**2.2 Settlement Administration Account and Reimbursement of Economic Costs**

SRG will fund a non-reversionary Settlement Administration Account of $325,000 for the reimbursement of economic costs incurred by Settlement Class Members that are not reimbursable under the original or additional AllClear Plans.[13] Settlement Class Members may submit one or more claims for reimbursement of such economic costs (including mileage reimbursement at the current IRS rate) up to an aggregate total of $500 per Settlement Class Member.[14] Settlement Class Members may also submit a claim for time spent addressing the Data Incident at a rate of $15 per hour for up to 10 hours, for a total of $150.[15] The total reimbursable amount thus is $650.

---

[8] Settlement Agreement – ECF No. 46-2 at 56 (¶¶ 1.28, 1.32, 1.33), 102.

[9] Capitalized terms in this order have the definition given to them in the Settlement Agreement.

[10] Settlement Agreement – ECF No. 46-2 at 58 (¶¶ 5.1.2–5.1.3). At the preliminary-approval hearing, the parties represented that the value of the credit monitoring exceeded $1.4 million.

[11] *Id.* at 58 (¶¶ 5.1.1).

[12] *Id.* at 54 (¶¶ 1.9).

[13] *Id.* at 64 (¶ 5.2.4).

[14] *Id.* at 60 (¶ 5.2).

[15] *Id.*

1  Class Members must make their claims on the Reimbursement Form and Affirmation Form.[16] In

2  the event that the value of the Claims exceeds or is less than the Settlement Consideration, the

3  Settlement Class Members will receive increased or decreased pro-rata distributions.[17]

**2.3 Nonmonetary Relief**

SRG agrees to implement and maintain the following data-security practices:

   a. The creation and implementation of an information security program containing policies, procedures, and technical controls regarding the handling of employee PII;
   b. Training and education by a qualified third party of SRG employees who handle PII; and
   c. Testing of SRG employees who handle PII and retraining as necessary.[18]

**2.4  Attorney's Fees and Costs**

The plaintiffs' counsel will petition the court for an award of reasonable attorney's fees and costs not to exceed $237,000; the fees will not reduce the Settlement Consideration available for Settlement Class Members.[19] SRG will not oppose the motion.[20]

**2.5 Service Awards**

The plaintiffs will petition for, and SRG will not oppose, service awards of $1,500 each (not to exceed a total of $15,000); the awards will not reduce the Settlement Consideration available for Settlement Class Members.[21]

**2.6  Release**

In return for the settlement relief, the Settlement Agreement has release provisions. SRG and its affiliated entities (the "Released Parties") will receive a release of claims arising out of or related to: (1) the disclosure of the Settlement Class Members' personal information; (2) SRG's maintenance of the Settlement Class Members' personal information; (3) SRG's policies, practices

---

[16] *Id.* at 60 (¶ 5.2) and 112, 114 (Exs. C–D).

[17] *Id.* at 61 (¶ 5.2.4).

[18] *Id.* at 62 (¶¶ 5.3–5.3.3). At the preliminary-approval hearing, the parties represented that the value of the nonmonetary relief was substantial.

[19] *Id.* at 72 (¶ 10.1).

[20] *Id.* (¶ 10.2).

[21] *Id.* (¶¶ 10.1–10.2).

or procedures relating to the maintenance, handling, and security of Employee personal information, including the training relating to the same and responses to breach incidents; (4) SRG's provision of notice to Settlement Class Members following the Data Incident; (5) the Data Incident, including SRG's response thereto; and (6) any event, matter, dispute or thing that in whole or in part, directly or indirectly, relates to or arises out of (1) through (5) above (the "Released Claims"), provided that nothing in the Release is intended to, does or shall be deemed to release any claims not arising out of, based upon, resulting from, or related to the Data Incident.[22]

### 2.7 Administration

SRG will provide the Settlement Administrator (Rust Consulting[23]) with the address information (including emails and addresses (to the extent reasonably available) for Settlement Class Members. The administrator will verify or update the mailing addresses received through the National Change of Address database or similar database and thereafter send each Class Member by email and U.S. mail a copy of the Summary Notice and the Election, Reimbursement and Affirmation Forms. The Summary Notice contains a description of the material terms of the settlement including the class definitions, a description of the Settlement Consideration, claims procedures, deadlines, procedures for exclusion, procedures for objections, and information about the settlement website (where Settlement Class Members can access the Settlement Agreement, the Long Form Notice (with answers to frequently asked questions), and other related documents and information).

The Settlement Agreement describes these procedures in detail.[24] The forms of Notice are attached to the Settlement Agreement.[25] The costs of administration are a flat fee of $35,000.

---

[22] *Id.* at 70–72 (¶¶ 9.1–9.6).

[23] *See* ECF No. 58.

[24] Settlement Agreement – ECF No. 46-2 at 64–70 (¶¶ 7.1–8.10.2).

[25] *Id.* at 91–110, Ex. A–B.

# ANALYSIS

## 1. Jurisdiction

The court has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2).

## 2. Conditional Certification of Settlement Classes

The court reviews the propriety of class certification under Federal Rule of Civil Procedure 23(a) and (b). When parties enter into a settlement before the court certifies a class, the court "must pay 'undiluted, even heightened, attention' to class certification requirements" because the court will not have the opportunity to adjust the class based on information revealed at trial. *Staton v. Boeing*, 327 F.3d 938, 952–53 (9th Cir. 2003) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Class certification requires the following: (1) the class must be so numerous that joinder of all members individually is "impracticable"; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the person representing the class must be able to fairly and adequately protect the interests of all class members. Fed. R. Civ. P. 23(a); *Staton*, 327 F.3d at 953.

The court finds preliminarily (for settlement purposes only) that the proposed Settlement Classes meet the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy.

First, there are approximately 2,700 in the Settlement Employee Class.[26] The class is so numerous that joinder of all members is impracticable.

Second, there are questions of law and fact common to the class. The class members allege identical claims under a breach-of-contract theory, and they allege identical UCL and negligence claims. The lawsuit involves a single data breach, which raises the following common issues for the Settlement Class Members: (a) whether SRG disclosed their PII; (b) whether it failed to protect their PII with industry-standard protocols and technologies; (c) whether SRG had notice that it

---

[26] Mot. – ECF No. 46-1 at 12.

was a target for hacking or phishing; and (d) whether SRG promised the Settlement Class Members that it would protect their PII that they provided as a condition of their employment.[27]

Third, the claims of the representative parties are typical of the claims of the class. All Settlement Employee Class Members allege that they provided PII to SRG as a condition of employment, and they may have provided PII for their spouses or other dependents. All representatives possess the same interest and suffer from the same injury. *Betorina v. Randstad U.S., L.P.*, No. 15-cv-0346-EMC, 2017 WL 1278758, *4 (N.D. Cal. April 6, 2017).

Fourth, the representative parties will fairly and adequately protect the interests of the class. They share the same interests as Settlement Class Members, there are no conflicts of interest, and the named plaintiffs and counsel will vigorously prosecute the case. *See Hanlon*, 150 F.3d at 1020.

The court also finds preliminarily (and for settlement purposes only) that questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3); *Brown v. Hain Celestial Group, Inc.*, No. 11-cv-03082-LB, 2014 WL 6483216, at *15–20 (N.D. Cal. Nov. 18, 2014). The court identified the common factual and legal questions, above. There are no individual issues that predominate over these common questions. All claims arise from one data breach, and liability can be determined on a class-wide basis. *See Betorina*, 2017 WL 1278758, at *5. Given the class size, and the prospect of individual, expensive trials, the class action is a superior method of adjudication.

The court finds too that certification of a nationwide class under California law is appropriate under the facts of this case. *See Ellsworth v. U.S. Bank, N.A.*, No. 3:12-cv-02506-LB, 2015 WL 12952698, *3 (N.D. Cal. Sept. 24, 2015).

The court thus conditionally certifies the Settlement Classes for settlement purposes only and for the purposes of giving the Classes notice of the settlement and conducting a final approval hearing.

---

[27] *Id.* at 12–13.

### 3. Preliminary Approval of Settlement

The approval of a class-action settlement has two stages: (1) the preliminary approval, which authorizes notice to the class; and (2) a final fairness hearing, where the court determines whether the parties should be allowed to settle the class action on the agreed-upon terms.

Settlement is a strongly favored method for resolving disputes, particularly "where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992); *see, e.g., In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). A court may approve a proposed class-action settlement only "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The court need not ask whether the proposed settlement is ideal or the best possible; it determines only whether the settlement is fair, free of collusion, and consistent with the named plaintiffs' fiduciary obligations to the class. *See Hanlon*, 150 F.3d at 1026–27 (9th Cir. 1998). In *Hanlon*, the Ninth Circuit identified factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class-action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted).

"Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable." *Garner v. State Farm Mut. Auto Ins. Co.*, 2010 WL 1687832, *13 (N.D. Cal. Apr. 22, 2010); *see, e.g., Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . ."); *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

The court has evaluated the proposed settlement agreement for overall fairness under the *Hanlon* factors and concludes that preliminary approval is appropriate.

First, the settlement is the product of serious, non-collusive, arm's-length negotiations and was reached after mediation with an experienced mediator and after extensive settlement discussions involving sophisticated counsel for all parties.

Second, the parties engaged in discovery regarding liability and damages.

Third, the settlement has no obvious deficiencies. There is no reversion. The settlement provides real benefits to the class, including cash benefits and changed business practices that benefit employees. Looking at the plaintiffs' possible recoveries through litigation, it is unlikely that they would receive a more favorable result. (The harm identified by the plaintiffs includes harm resulting from monitoring accounts, dealing with fraudulent tax returns, delayed refunds (for some), and decreased credit scores for two named plaintiffs due to unauthorized credit checks run on their names.[28]) A related point about damages is that there are risks that attend data breach litigation, including issues about standing (as SFG argued in its motion to dismiss).[29]

In sum, the court finds that viewed as a whole, the proposed settlement is sufficiently "fair, adequate, and reasonable" such that preliminary approval of the settlement is warranted. *See Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). The court thus approves the settlement agreement preliminarily and authorizes notice to the class.

The court will address the issue of attorney's fees at the final fairness hearing. *See Hanlon*, 150 F.3d at 1029 (twenty-five percent is a benchmark in common fund cases); *cf. Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) (twenty-five percent benchmark, though a starting point for analysis, may be inappropriate in some cases; fees must be supported by findings).

### 4. Appointment of Class Representative, Class Counsel, and Claims Administrator

The court appoints the plaintiffs Irene Sung, Kimberly Carboni, Annie Fulton, Cary Berger, Emmalyne Owens, Ruth Phelps, Christine Willetts, Linda Graves, and Christine Nizibian as Class

---

[28] Mot. – ECF No. 46-1 at 8.

[29] Mot. – ECF No. 15.

Representatives for the Settlement Employee Class. The court appoints the plaintiff Melissa Berger as Class Representative for the Settlement Third-Party Class. The court finds provisionally that they have claims that are typical of members of the Settlement Classes generally and that they are adequate representatives of the other members of the proposed Settlement Classes.

The court appoints Rosemary M. Rivas of Levi & Korsinsky, LLP and Gayle M. Blatt of Casey Gerry Schenk Francavilla Blatt & Penfield LLP as Settlement Class Counsel and finds that they have the appropriate qualifications, experience, and expertise in prosecuting class actions.

The court designates and approves Rust Consulting as the claims administrator. It will administer the settlement subject to the oversight of the parties and this court, as described in the Settlement Agreement.

## 5. Class Notice

The court approves the class notice and plan, including the Short Form and Long Form Notices and the Affirmation Form, Reimbursement Form, and Election Form.[30] The court finds that the class notice provides the best notice practicable, satisfies the notice requirements of Rule 23, adequately advises Settlement Class Members of their rights under the settlement agreement, and meets the requirements of due process. The forms of notice fairly, plainly, accurately, and reasonably provides class members with all required information, including (among other things): (1) a summary of the lawsuit and claims asserted; (2) a clear definition of the classes; (3) a description of the material terms of the settlement; (4) a disclosure of the release of the claims should they remain class members; (5) an explanation of class members' opt-out rights, a date by which they must opt out, and information about how to do so; (6) the date, time, and location of the final fairness hearing; and (7) the identity of class counsel and the provisions for attorney's fees, costs, and class-representative service awards.[31] *See* Fed. R. Civ. P. 23(c)(2)(B). The parties — by agreement — may revise the Notice forms in ways that are not material, such as for accuracy or formatting.

---

[30] Settlement Agreement – ECF No. 46-2 at 91–117, Exs. A–E.
[31] Notice – ECF No. 145-1 at 33–42.

SRG will provide information about Settlement Class Members to the Settlement Administrator, as provided in the Settlement Agreement. The Settlement Administrator will not provide this information to anyone other than Class Counsel. Class Counsel will keep the information confidential and will use the information only in connection with administering the Settlement. The Settlement Administrator must have data-security measures reasonable calculated to protect this information from disclosure.[32]

## 6. Compliance with Class Action Fairness Act

Within ten days of the filing of the motion for preliminary approval (filed on January 31, 2018), SRG (at its own expense) will provide notice of the settlement and other information showing compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, to the appropriate federal and state officials. Any final settlement approval will be more than 90 days after service as required by 28 U.S.C. § 1715.

## 7. Procedures for Final Approval Hearing

### 7.1 Deadlines and Hearing

| Event | Date |
| --- | --- |
| Notice of Class Action Settlement completed as per Notice Plan | March 29, 2018 [within 35 days following entry of this Order] |
| Last day to file Motion for Fees | April 20, 2018 [35 days after entry of this Order and at least 21 days before the Opt-Out and Objection Deadline] |
| Last day to file Motion for Final Approval | May 3, 2018 |
| Opt-Out and Objection Deadline | May 14, 2018 [45 days following the Notice Date] |
| Final Approval Hearing | May 31, 2018 at 9:30 a.m. [at least 90 days after CAFA notice] |
| Last day for class members to submit claims or enroll in Additional AllClear ID Plan | July 13, 2018 |

---

[32] Proposed Order – ECF No. 46-3 at 4 (¶ 15).

ORDER – No. 17-cv-02760-LB    11

**7.2 Final Approval Hearing**

The Final Approval Hearing will be on May 31, 2018, at 9:30 a.m. at the United States Courthouse for the Northern District of California, 450 Golden Gate Avenue, 15th Floor, Courtroom C, San Francisco, CA 94102. At the hearing, the court will consider whether to: (1) grant final certification of the Settlement Classes; (2) finally approve the Settlement Agreement and the releases in it; (3) approve the service awards; and (4) award attorney's fees and costs to Class Counsel. The court may, for good cause, extend any of the deadlines in this order or continue the final approval hearing without further notice to the Settlement Class members, except that notice of any such extensions must be included on the Settlement Website. Settlement Class Members should check the Settlement Website regularly for updates and further details regarding extensions of these deadlines. Exclusions and Objections must meet the deadlines and follow the requirements set forth in the approved Class Notice in order to be valid.

**7.3 Requests for Exclusion From the Settlement**

Class members may exclude themselves from the settlement by sending a written notice of that intent to the designated post office box designated in the Notice. All requests for exclusion must be postmarked by May 14, 2018.

**7.4 Objections to the Settlement**

Settlement Class Members may object to the settlement (so long as they do not timely opt out of the Settlement Class) by sending written objections postmarked no later than May 14, 2018 to the Clerk of Court, with the following information: (1) the case name and number (*Sung v. Schurman Fine Papers*, No. 3:17-cv-02760-LB); (2) the Class Member's name, current postal address, current phone number and any email address; (3) a written statement of the grounds for the objection, accompanied by any legal support for the objection and any evidence that the objecting Settlement Class Member wants to introduce as evidence; (4) the identity of any counsel representing the objector, including any former or current counsel who may claim entitlement to compensation for any reason related to the objection to the Settlement or the Fee Application; (5) a statement confirming whether the objector will appear and/or testify at the Final Approval Hearing and the identification of any counsel representing the objector who intends to appear at the Final

Approval Hearing; (6) a list of any persons who will be called to testify at the Final Approval Hearing; and (7) the objector's signature signed under oath and penalty of perjury or, if legally incapacitated, the signature of a duly authorized representative (along with documentation setting forth the incapacitation and representation).[33] Settlement Class Members who want to speak for or against the proposed Settlement may speak at the Final Approval Hearing, if they have provide the written notice of their intent to appear (together with the other information set forth earlier in this paragraph) postmarked or filed by May 14, 2018 (45 days after the Notice of Class Action Settlement is completed). The court can excuse a failure to comply with this requirement for good cause. At the Final Approval Hearing, Settlement Class Counsel and counsel for SRG must be prepared to respond to objections filed by Settlement Class Members and to provide other information, as necessary, bearing on whether the Settlement should be approved

### 7.5 Other Orders

Settlement Class Counsel and Defendant are authorized to take, without further court approval, all necessary and appropriate steps to implement the Settlement Agreement including the approved notice plan.

## CONCLUSION

The court approves the settlement preliminarily. This disposes of ECF No. 46.

**IT IS SO ORDERED.**

Dated: March 11, 2018

LAUREL BEELER
United States Magistrate Judge

---

[33] Settlement Agreement – ECF No. 46-2 at 69–70 (¶ 8.10.1).