UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| IRENE SUNG, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SCHURMAN FINE PAPERS d/b/a SCHURMAN RETAIL GROUP,<br><br>Defendant. | Case No. 17-cv-02760-LB<br><br>**FINAL APPROVAL ORDER**<br><br>Re: ECF No. 46 |

**INTRODUCTION**

This is a putative class action under Rule 23.[1] The plaintiffs are current and former employees (and their spouses and dependents) of Schurman Fine Papers d/b/a Schurman Retail Group ("SRG"). They contend that a phishing attack on SRG in 2016 — and SRG's lax security and poor training — resulted in the theft of their W-2 data: names, addresses, compensation, and Social Security Numbers.[2] On behalf of national and state classes, they assert the following claims arising out of the data breach of their personally identifying information ("PII"): (1) negligence (on behalf of all classes); (2) unlawful business practices in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 (on behalf of all classes); (3) unfair

---

[1] First Amended Complaint ("FAC") – ECF No. 28. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 2 (¶ 1).

ORDER – No. 17-cv-02760-LB

business practices in violation of California's UCL (on behalf of all classes); (4) breach of implied contract (on behalf of the Nationwide Employee Class); (5) a violation of California's Security Breach Notification Law, Cal. Civ. Code § 1798.82 (on behalf of the California Employee Class); and (6) a violation of North Carolina's Security Breach Notification Law, N.C. Gen. Stat. §§ 75–61, 75–65, *et seq.* (on behalf of the North Carolina Employee Class).[3]

The parties settled their case, and the plaintiffs filed an unopposed motion for preliminary approval of the class-action settlement.[4] The court previously granted the motion.[5] The plaintiffs then moved for final approval of the settlement.[6] The court held a fairness hearing on June 28, 2018. The court finds the settlement fair, adequate, and reasonable and approves the final settlement, including fees, costs, and service awards.

# STATEMENT

## 1. Other Information about the Lawsuit to Date

After the defendants filed a motion to dismiss, the plaintiffs filed the first amended class-action complaint.[7] The parties participated in informal discovery and then agreed to mediate their case before the Honorable Edward A. Infante (Ret.), who has mediated a number of data-breach cases.[8] After a full-day mediation, the parties "ultimately reached an agreement on the essential terms" of a settlement and signed a term sheet, and they finalized the settlement agreement over the next months.[9]

---

[3] *Id.* at 17–24.

[4] Mot. – ECF No. 46; Statement of Non-Opposition – ECF No. 50.

[5] Order – ECF No. 59.

[6] Mot. – ECF No. 66; Mot. for Fees and Costs – ECF No. 62. The defendant filed statements of non-opposition to both motions. Statements of Non-Opposition – ECF Nos. 64, 72.

[7] ECF Nos. 15, 28.

[8] Mot. – ECF No. 46-1 at 1.

[9] *Id.*

## 2. Proposed Settlement

The parties agreed to the following class definitions for settlement purposes only:

> **Settlement Employee Class**: All persons who are or were employees of SRG or its affiliates (collectively "SRG") and whose W-2 information was involved in the Data Incident.
>
> **Settlement Third-Party Class**: All individuals who were Qualifying Spouses or Qualifying Adult Dependents (as defined in the Settlement Agreement) of a Settlement Employee Class Member.
>
> Unless expressly distinguished, "Settlement Class" or "Settlement Class Members" refers to both of the above-defined classes collectively.
>
> Excluded from the Settlement Class are Defendant and its subsidiaries and affiliates. .[10]

In summary form, the Settlement Agreement[11] is as follows:

### 2.1 Identity Theft Protection Services

SRG originally offered two years of credit monitoring to its employees through AllClear ID. The Settlement Agreement provides extended credit monitoring through AllClear ID for all Settlement Class Members, regardless of whether they previously enrolled in the credit monitoring, through March 20, 2022.[12] Unless they have timely opted out of the Settlement, Settlement Class Members who have already enrolled will have their coverage extended automatically.[13] Settlement Class Members who have not enrolled will have until July 13, 2018 (the "Election Deadline") to submit an Election Form to enroll in the credit monitoring.[14]

### 2.2 Settlement Administration Account and Reimbursement of Economic Costs

SRG will fund a non-reversionary Settlement Administration Account of $325,000 for the reimbursement of economic costs incurred by Settlement Class Members that are not reimbursable under the original or additional AllClear Plans.[15] Settlement Class Members may submit one or more claims for reimbursement of such economic costs (including mileage reimbursement at the

---

[10] Settlement Agreement – ECF No. 46-2 at 56 (¶¶ 1.28, 1.32, 1.33), 102.

[11] Capitalized terms in this order have the definition given to them in the Settlement Agreement.

[12] Settlement Agreement – ECF No. 46-2 at 58 (¶¶ 5.1.2–5.1.3). At the preliminary-approval hearing, the parties represented that the value of the credit monitoring exceeded $1.4 million.

[13] *Id.* at 58 (¶¶ 5.1.1).

[14] *Id.* at 54 (¶¶ 1.9).

[15] *Id.* at 64 (¶ 5.2.4).

current IRS rate) up to an aggregate total of $500 per Settlement Class Member.[16] Settlement Class Members may also submit a claim for time spent addressing the Data Incident at a rate of $15 per hour for up to 10 hours, for a total of $150.[17] The total reimbursable amount thus is $650. Class Members must make their claims on the Reimbursement Form and Affirmation Form.[18] In the event that the value of the Claims exceeds or is less than the Settlement Consideration, the Settlement Class Members will receive increased or decreased pro-rata distributions.[19]

**2.3 Nonmonetary Relief**

SRG agrees to implement and maintain the following data-security practices:

a. The creation and implementation of an information security program containing policies, procedures, and technical controls regarding the handling of employee PII;
b. Training and education by a qualified third party of SRG employees who handle PII; and
c. Testing of SRG employees who handle PII and retraining as necessary.[20]

**2.4 Attorney's Fees and Costs**

The settlement agreement provided that plaintiffs' counsel would petition the court for reasonable attorney's fees and costs not to exceed $237,500; the fees will not reduce the Settlement Consideration available for Settlement Class Members.[21]

**2.5 Service Awards**

The agreement provided for service awards of $1,500 each (not to exceed a total of $15,000); the awards will not reduce the Settlement Consideration available for Settlement Class Members.[22]

---

[16] *Id.* at 60 (¶ 5.2).

[17] *Id.*

[18] *Id.* at 60 (¶ 5.2) and 112, 114 (Exs. C–D).

[19] *Id.* at 61 (¶ 5.2.4).

[20] *Id.* at 62 (¶¶ 5.3–5.3.3). At the preliminary-approval hearing, the parties represented that the value of the nonmonetary relief was substantial.

[21] *Id.* at 72 (¶ 10.1).

[22] *Id.* (¶¶ 10.1–10.2).

ORDER – No. 17-cv-02760-LB 4

**2.6 Release**

In return for the settlement relief, the Settlement Agreement has release provisions. SRG and its affiliated entities (the "Released Parties") will receive a release of claims arising out of or related to: (1) the disclosure of the Settlement Class Members' personal information; (2) SRG's maintenance of the Settlement Class Members' personal information; (3) SRG's policies, practices or procedures relating to the maintenance, handling, and security of Employee personal information, including the training relating to the same and responses to breach incidents; (4) SRG's provision of notice to Settlement Class Members following the Data Incident; (5) the Data Incident, including SRG's response thereto; and (6) any event, matter, dispute or thing that in whole or in part, directly or indirectly, relates to or arises out of (1) through (5) above (the "Released Claims"), provided that nothing in the Release is intended to, does or shall be deemed to release any claims not arising out of, based upon, resulting from, or related to the Data Incident.[23]

**2.7 Administration**

The procedures required SRG to provide the Settlement Administrator (Rust Consulting[24]) with the address information (including emails and addresses ((to the extent reasonably available)) for Settlement Class Members. Rust was to verify or update the mailing addresses received through the National Change of Address database or similar databases and thereafter send each Class Member by email and U.S. mail a copy of the Summary Notice and the Election, Reimbursement, and Affirmation Forms. The Summary Notice contains a description of the material terms of the settlement including the class definitions, a description of the Settlement Consideration, claims procedures, deadlines, procedures for exclusion, procedures for objections, and information about the settlement website (where Settlement Class Members can access the Settlement Agreement, the Long Form Notice ((with answers to frequently asked questions)), and other related documents and information).

---

[23] *Id.* at 70–72 (¶¶ 9.1–9.6).

[24] *See* ECF No. 58.

The Settlement Agreement describes these procedures in detail.[25] The forms of Notice are attached to the Settlement Agreement.[26] The costs of administration are a flat fee of $35,000.

The administrator complied with these procedures. There was individual and direct notice by U.S. mail to 2,690 potential class members, supplemented by email to Papyrus retail stores and store managers who could inform affected employees about the Settlement.[27] The notice reached 94% of the class members.[28]

The Settlement Website had the notice, the Affirmation, Election, and Reimbursement forms, the Settlement Agreement, and the court documents.[29] As of May 5, 2018, there have been 304 unique visitors to the website.[30] Rust established the toll-free number for settlement-related information.[31] As of May 5, 2018, there have been 82 calls to the toll-free line.[32]

As of May 5, 2018, 136 notice packets were returned as undeliverable with no forwarding address, and 8 were returned as undeliverable with a forwarding address.[33] Rust found new addresses for 88 of the 136 undeliverable notices and remailed notice, and it remailed notice to the 8 addresses that were returned as undeliverable with a forwarding address.[34]

As of May 5, 2018, Rust has received 66 form submissions: 62 from affected employees and 4 from affected family members.[35] Additionally, 419 Settlement Class Members will receive an

---

[25] Settlement Agreement – ECF No. 46-2 at 64–70 (¶¶ 7.1–8.10.2).

[26] *Id.* at 91–110, Ex. A–B.

[27] Blake Decl. – ECF No. 66-2 at 81 (¶¶ 2, 4). The emails were to 141 employees and 190 stores for a total of 331 email addresses. *Id.* at 82 (¶ 9). 229 emails were delivered successfully, and two were returned undeliverable because the email box was full. *Id.* (¶ 11).

[28] *Id.* at 82 (¶ 5).

[29] *Id.* at 82 (¶ 12).

[30] *Id.* (¶ 13).

[31] *Id.* at 83 (¶ 16).

[32] *Id.* (¶ 18).

[33] *Id.* at 82 (¶ 6).

[34] *Id.* (¶¶ 7–8).

[35] *Id.* at 83 (¶ 20).

automatic extension of credit monitoring to May 2022.[36] It has received two requests for exclusion from affected employees.[37]

On May 23, 2018, the court authorized an additional mailing of the Summary Postcard Notice to class members who have not submitted a form.[38] The estimated cost was under $3,500.[39] The plaintiffs submitted updated information showing costs to date of $45,000 with an additional $7,500 to $10,000 to complete the claims processing.[40] The administrator will honor the $35,000 flat fee that the court authorized and accept $5,000 for the mailing of the second-round notice for a total of $40,000.[41]

## ANALYSIS

### 1. Jurisdiction

The court has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2).

### 2. Certification of Settlement Classes

The court reviews the propriety of class certification under Federal Rule of Civil Procedure 23(a) and (b). When parties enter into a settlement before the court certifies a class, the court "must pay 'undiluted, even heightened, attention' to class certification requirements" because the court will not have the opportunity to adjust the class based on information revealed at trial. *Staton v. Boeing*, 327 F.3d 938, 952–53 (9th Cir. 2003) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

---

[36] Mot. – ECF No. 66-1 at 10.
[37] Blake Decl. – ECF No. 66-2 at 83 (¶ 21).
[38] Order – ECF No. 68.
[39] *Id.* at 2.
[40] Response – ECF No. 77 at 2.
[41] *Id.*

ORDER – No. 17-cv-02760-LB  7

Class certification requires the following: (1) the class must be so numerous that joinder of all members individually is "impracticable"; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the person representing the class must be able to fairly and adequately protect the interests of all class members. Fed. R. Civ. P. 23(a); *Staton*, 327 F.3d at 953.

The court finds (for settlement purposes only) that the proposed Settlement Classes meet the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy.

First, there are approximately 2,700 persons in the Settlement Employee Class.[42] The class is so numerous that joinder of all members is impracticable.

Second, there are questions of law and fact common to the class. The class members allege identical claims under a breach-of-contract theory, and they allege identical UCL and negligence claims. The lawsuit involves a single data breach, which raises the following common issues for the Settlement Class Members: (a) whether SRG disclosed their PII; (b) whether it failed to protect their PII with industry-standard protocols and technologies; (c) whether SRG had notice that it was a target for hacking or phishing; and (d) whether SRG promised the Settlement Class Members that it would protect their PII that they provided as a condition of their employment.[43]

Third, the claims of the representative parties are typical of the claims of the class. All Settlement Employee Class Members allege that they provided PII to SRG as a condition of employment, and they may have provided PII for their spouses or other dependents. All representatives possess the same interest and suffer from the same injury. *Betorina v. Randstad U.S., L.P.*, No. 15-cv-0346-EMC, 2017 WL 1278758, *4 (N.D. Cal. April 6, 2017).

Fourth, the representative parties will fairly and adequately protect the interests of the class. They share the same interests as Settlement Class Members, there are no conflicts of interest, and the named plaintiffs and counsel will vigorously prosecute the case. *See Hanlon*, 150 F.3d at 1020.

---

[42] Mot. – ECF No. 46-1 at 12.

[43] *Id.* at 12–13.

ORDER – No. 17-cv-02760-LB  8

The court also finds (for settlement purposes only) that questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3); *Brown v. Hain Celestial Group, Inc.*, No. 11-cv-03082-LB, 2014 WL 6483216, at *15–20 (N.D. Cal. Nov. 18, 2014). The court identified the common factual and legal questions, above. There are no individual issues that predominate over these common questions. All claims arise from one data breach, and liability can be determined on a class-wide basis. *See Betorina*, 2017 WL 1278758, at *5. Given the class size, and the prospect of individual, expensive trials, the class action is a superior method of adjudication.

The court finds too that certification of a nationwide class under California law is appropriate under the facts of this case. *See Ellsworth v. U.S. Bank, N.A.*, No. 3:12-cv-02506-LB, 2015 WL 12952698, *3 (N.D. Cal. Sept. 24, 2015).

The court thus certifies the Settlement Classes for settlement purposes only under Federal Rue of Civil Procedure 23(b)(3).

### 3. Approval of Settlement

Settlement is a strongly favored method for resolving disputes, particularly "where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992); *see, e.g., In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). A court may approve a proposed class-action settlement only "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The court need not ask whether the proposed settlement is ideal or the best possible; it determines only whether the settlement is fair, free of collusion, and consistent with the named plaintiffs' fiduciary obligations to the class. *See Hanlon*, 150 F.3d at 1026–27 (9th Cir. 1998). In *Hanlon*, the Ninth Circuit identified factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class-action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a

government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted).

"Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable." *Garner v. State Farm Mut. Auto Ins. Co.*, 2010 WL 1687832, *13 (N.D. Cal. Apr. 22, 2010); *see, e.g., Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . ."); *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

The court has evaluated the proposed settlement agreement for overall fairness under the *Hanlon* factors and concludes that approval is appropriate.

First, the settlement is the product of serious, non-collusive, arms-length negotiations and was reached after mediation with an experienced mediator and after extensive settlement discussions involving sophisticated counsel for all parties.

Second, the parties engaged in discovery regarding liability and damages.

Third, the settlement has no obvious deficiencies. There is no reversion. The settlement provides real benefits to the class, including cash benefits and changed business practices that benefit employees. Looking at the plaintiffs' possible recoveries through litigation, it is unlikely that they would receive a more favorable result. (The harm identified by the plaintiffs includes harm resulting from monitoring accounts, dealing with fraudulent tax returns, delayed refunds (for some), and decreased credit scores for two named plaintiffs due to unauthorized credit checks run on their names.[44]) A related point about damages is that there are risks that attend data breach litigation, including issues about standing (as SFG argued in its motion to dismiss).[45]

In sum, the court finds that viewed as a whole, the proposed settlement is sufficiently "fair, adequate, and reasonable" such that approval of the settlement is warranted. *See Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir.

---

[44] Mot. – ECF No. 46-1 at 8.

[45] Mot. – ECF No. 15.

1982). The court thus approves the settlement agreement and authorizes notice to the class.

### 4. Appointment of Class Representative, Class Counsel, and Claims Administrator

The court appoints the plaintiffs Irene Sung, Kimberly Carboni, Annie Fulton, Cary Berger, Emmalyne Owens, Ruth Phelps, Christine Willetts, Linda Graves, and Christine Nizibian as Class Representatives for the Settlement Employee Class and the plaintiff Melissa Berger as Class Representative for the Settlement Third-Party Class. The court finds that they have claims that are typical of members of the Settlement Classes generally and that they are adequate representatives of the other members of the proposed Settlement Classes.

The court confirms its previous appointment of Rosemary M. Rivas of Levi & Korsinsky, LLP and Gayle M. Blatt of Casey Gerry Schenk Francavilla Blatt & Penfield LLP as Settlement Class Counsel. As the court found previously, they have the appropriate qualifications, experience, and expertise in prosecuting class actions.

The court previously appointed Rust Consulting as the claims administrator.

### 5. Class Notice

As described above, the claims administrator provided notice to the members of the class in the form that the court approved. The notice met all legal requisites: it was the best notice practicable, satisfied the notice requirements of Rule 23, adequately advised Settlement Class Members of their rights under the settlement agreement, and met the requirements of due process. The forms of notice fairly, plainly, accurately, and reasonably provided class members with all required information, including (among other things): (1) a summary of the lawsuit and claims asserted; (2) a clear definition of the classes; (3) a description of the material terms of the settlement; (4) a disclosure of the release of the claims should they remain class members; (5) an explanation of class members' opt-out rights, a date by which they must opt out, and information about how to do so; (6) the date, time, and location of the final fairness hearing; and (7) the identity of class counsel and the provisions for attorney's fees, costs, and class-representative

service awards.[46] *See* Fed. R. Civ. P. 23(c)(2)(B).

### 6. Compliance with Class Action Fairness Act

On March 16, 2018, the required notice showing compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, was provided to the appropriate federal and state officials.[47] This final settlement approval is more than 90 days after service as required by 28 U.S.C. § 1715.

### 7. Attorney's Fees and Costs

Class counsel asks for $237,500 for attorney's fees and costs.[48] In this diversity case, the court finds that the fees and costs are reasonable fees under a lodestar analysis, given the benefits to the class.

Rule 23(h) of the Federal Rules of Civil Procedure provides: "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fee provisions included in proposed class-action settlements must be reasonable. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). The court is not bound by the parties' settlement agreement as to the amount of attorney's fees. *See id.* at 942–43. The Ninth Circuit has instructed district courts to review class fee awards with special rigor:

> Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper.

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (quotation omitted).

When counsel recovers a common fund that confers a "substantial benefit" on a class of beneficiaries, counsel is "entitled to recover their attorney's fees from the fund." *Fischel v.*

---

[46] Notice – ECF No. 66-2 at 45–64.
[47] ECF No. 60.
[48] Mot. for Fees and Costs – ECF No. 62 at 2.

ORDER – No. 17-cv-02760-LB           12

*Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). In common-fund cases, courts may calculate a fee award under either the "lodestar" or "percentage of the fund" method. *Id.*; *Hanlon*, 150 F.3d at 1029. (The plaintiffs contend — and the defendant does not dispute — that a lodestar award is appropriate under California's Private Attorney General Statute, Cal. Code Civ. P. 1021.5.[49])

Where the settlement involves a common fund, courts typically award attorney's fees based on a percentage of the total settlement. The Ninth Circuit has established a "benchmark" that fees should equal 25% of the settlement, although courts diverge from the benchmark based on a variety of factors, including "the results obtained, risk undertaken by counsel, complexity of the issues, length of the professional relationship, the market rate, and awards in similar cases." *Morales v. Stevco, Inc.*, No. CIV-F-09-0704-AWI-JLT, 2013 WL 1222058, *2 (E.D. Cal. Mar. 25, 2013); *see also Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33% fee award); *Pacific Enterprises*, 47 F.3d at 379 (same); *State of Fla. v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

When determining the value of a settlement, courts consider the monetary and non-monetary benefits that the settlement confers. *See, e.g.*, *Staton*, 327 F.3d at 972–74; *Pokorny v. Quixtar, Inc.*, No. C-07-0201-SC, 2013 WL 3790896, *1 (N.D. Cal. July 18, 2013) ("The court may properly consider the value of injunctive relief obtained as a result of settlement in determining the appropriate fee."); *In re Netflix Privacy Litig.*, No. 5:11-CV-0379-EJD, 2013 WL 1120801, *7 (N.D. Cal. Mar. 18, 2013) (settlement value "includes the size of the cash distribution, the *cy pres* method of distribution, and the injunctive relief").

Finally, Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits being made available to class members rather than the actual amount that is ultimately claimed. *Young v. Polo Retail, LLC*, No. C-02-4547-VRW, 2007 WL 951821, *5–*6 (N.D. Cal. Mar. 28, 2007) (citing *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997) ("district court abused its discretion in basing attorney fee award on actual distribution to class"

---

[49] Mot. for Fees and Costs – ECF No. 62-1 at 11; Statement of Non-Opposition – ECF No. 64.

instead of amount being made available) (quoted language from *Young*)).

If the court applies the percentage method, it then typically roughly calculates the lodestar as a "cross-check to assess the reasonableness of the percentage award." *See*, *e.g.*, *Weeks v. Kellogg Co.*, No. CV-09-8102-MMM-RZx, 2013 WL 6531177, *25 (C.D. Cal. Nov. 23, 2013); *see also Serrano v. Priest*, 20 Cal. 3d 25, 48–49 (1977); *Fed-Mart Corp. v. Pell Enters.*, 111 Cal. App. 3d 215, 226–27 (1980); *Melnyk v. Robledo*, 64 Cal. App. 3d 618, 624 (1976); *Clejan v. Reisman*, 5 Cal. App. 3d 224, 241 (1970). "The lodestar . . . is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000). Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Id*.

Class counsel also are entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action settlement). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

Based on the declarations submitted by the plaintiff's counsel establishing that the fees are a .25 percent discount from the collective lodestar,[50] the court finds that that requested fees and costs are reasonable and appropriate under the lodestar method. The billing rates are within normal and customary ranges for timekeepers with similar qualifications and experience in the relevant market. The rates counsel used are appropriate given the deferred and contingent nature of counsel's compensation. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2nd Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the

---

[50] Rivas Decl. – ECF No. 62-2; Blatt Decl. – ECF No. 62-3. The total lodestar fees are $302,226.25, and the costs are $10,828.01. Mot for Fees and Costs – ECF No. 62-1 at 10 (citing Rivas Decl. – ECF No. 62-2 and Blatt Decl. – ECF No. 62-3).

delay in payment . . . .") (citing *Missouri v. Jenkins*, 491 U.S. 274, 283–84 (1989)); *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) ("The district court has discretion to compensate delay in payment in one of two ways: (1) by applying the attorneys' current rates to all hours billed during the course of litigation; or (2) by using the attorneys' historical rates and adding a prime rate enhancement."). Counsel also submitted a sufficient breakdown of the attorneys' billing efforts for the court to reach its conclusion about the lodestar.

The court concludes that a fee award at the requested amount is justified. *See Hanlon*, 150 F.3d at 1029. It is appropriate based on counsel's efforts and the substantial benefits to the class. It is supported by the lodestar, the efficiency of the litigation, the quality of the representation, and the contingent risk.

### 8. Service Award

District courts must evaluate proposed incentive awards individually, using relevant factors that include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59 (citation omitted). The Ninth Circuit has "noted that in some cases incentive awards may be proper but [has] cautioned that awarding them should not become routine practice." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013) (discussing *Staton*, 327 F.3d at 975–78). The Ninth Circuit also has emphasized that district courts "must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Id.* at 1164.

Counsel described sufficiently the efforts of the named plaintiffs, including consulting with

counsel, assisting in discovery, and otherwise participating in the litigation.[51] The court approves the service award of $1,500 each to the named plaintiffs.

## CONCLUSION

The court approves the class-action settlement. From the total settlement fund, and pursuant to the settlement terms, the court allocates (1) $237,500 to attorney's fees and costs, (2) $40,000 for administration costs, and (3) a $1,500 service award to each named plaintiff. The court further orders the following:

1. This court dismisses the action on the merits with prejudice and without an award of costs or fees to any party (except as provided in this order).

2. This Final Approval Order and Judgment applies to all claims or causes of action settled under the terms of the Settlement Agreement and shall be fully binding with respect to all Settlement Class Members. This Final Approval Order and Judgment will have a res judicata effect and bar the Settlement Class Representatives and each Settlement Class Member and Releasing Party who did not timely opt out from bringing any action asserting any of the "Released Claims" against any of the Released Parties as provided in the Settlement Agreement.

3. This Final Approval Order is not, and shall not be construed as, an admission by Defendant or any Released Party of any liability or wrongdoing in this or in any other proceeding.

4. This action, including all claims asserted herein, is hereby dismissed with prejudice in all respects.

5. Without affecting the finality of this Final Order and Judgment, the court retains jurisdiction to enforce the terms of the Settlement Agreement.

6. The court hereby enters final Judgment in this action, consistent with the terms of the Settlement Agreement, which is a final judgment under Rule 54(b) of the Federal Rules of Civil Procedure. The court finds that no reason exists for delay in ordering final judgment pursuant to

---

[51] Rivas Decl. – ECF No. 62-2 at 4 (¶ 15).

Federal Rule of Civil Procedure 54(b) and thus directs the Clerk of Court to enter the judgment forthwith. The court also directs the Clerk to close the file.

This disposes of ECF Nos. 62 and 66.

**IT IS SO ORDERED.**

Dated: July 5, 2018

_____
LAUREL BEELER
United States Magistrate Judge